*Doyle v. City of Burlington Police Department*, 15-1-18 Wncv (Teachout, J., Aug. 31, 2018)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 15-1-18 Wncv** |

**REED DOYLE**
    **Plaintiff**

    **v.**

**CITY OF BURLINGTON POLICE DEPARTMENT**
    **Defendant**

**DECISION**
**Plaintiff's Motion for Judgment on the Pleadings**

This is a Public Records Act (PRA), 1 V.S.A. §§ 315–320, dispute arising out of a request by Plaintiff Reed Doyle to the City of Burlington Police Department to "inspect" police bodycam footage and certain paperwork related to an incident involving Burlington police on June 17, 2017 in the City's Roosevelt Park. Initially, the relevant records custodian denied the request. Mr. Doyle, then represented by counsel, sought review before the relevant "head of the agency," Police Chief Brandon del Pozo. 1 V.S.A. § 318(c). Chief del Pozo assented to production of the video and the paperwork. He took the position, however, that several PRA exemptions apply to various aspects of the request. See 1 V.S.A. § 317(c) (PRA exemptions). Electronically redacting the bodycam footage in particular would require substantial staff time. He provided an estimate of the expense, less the value of the first 30 minutes, to Mr. Doyle and requested payment of the low end of the estimate in advance of any redaction and production. See 1 V.S.A. § 316(c) (permitting agencies to request prepayment of staff time charges). Mr. Doyle responded by filing this suit.

The principal issue Mr. Doyle raises in this case is the propriety of charging anything for staff time expended by the City in responding to Mr. Doyle's request, regardless of how burdensome the request may be. In Mr. Doyle's view, the PRA only potentially permits staff time charges when the agency agrees to create a new document that never existed before or it agrees to spend more than 30 minutes to produce tangible copies of existing documents that the requestor then will take ownership and possession of. Mr. Doyle argues that he merely wants to "inspect" the bodycam footage and related paperwork, they are pre-existing, not something the City needs to create, and he does not want to take ownership and possession of them. The PRA, he argues, does not permit staff time charges when a requestor merely wants to look at, but not walk away with, a public record.

Mr. Doyle has filed a motion for judgment on the pleadings addressing this issue. Both parties have briefed the matter and neither indicates that any factual development is necessary prior to a ruling as a matter of law.

Mr. Doyle's argument is predicated on a perceived technical dichotomy between two

expressions appearing in various provisions of the PRA—"inspect" and "copy."  In his view, the PRA permits various charges for copies of public records, by which he means duplicating an existing record so that the requestor may take possession of it, but it permits no charges whatsoever when the request is merely to inspect a public record, by which he means to look at the record but not take possession of it or a copy.  This argument is an extension of a trial court ruling in a 2011 PRA case on which he relies heavily.  *Vermont State Employees' Ass'n v. Vermont Agency of Natural Resources*, Nos. 517-7-10 Wncv, 518-7-10 Wncv, 2011 WL 121649 (Vt. Super. Ct. January 6, 2011).  The *VSEA* decision was not appealed, is not binding, and did not address staff time charges for electronic redactions to a video recording.  The principal support it provides to Mr. Doyle's argument here is that it lends some credence to the technical, dichotomous view of "inspection" and "copy" in the PRA.

> The principal fee provision at issue in this case appears at 1 V.S.A. § 316(c):
>
> Unless otherwise provided by law, in the following instances an agency may also charge and collect the cost of staff time associated with complying with a request for a copy of a public record: (1) the time directly involved in complying with the request exceeds 30 minutes; (2) the agency agrees to create a public record; or (3) the agency agrees to provide the public record in a nonstandard format and the time directly involved in complying with the request exceeds 30 minutes.  The agency may require that requests subject to staff time charges under this subsection be made in writing and that all charges be paid, in whole or in part, prior to delivery of the copies.  Upon request, the agency shall provide an estimate of the charge.

Each of the three bases for charging "the cost of staff time associated with complying with a request" refers to a request "for a copy of a public record" and does not also refer to a request to inspect a record.  This provision originally was added to the PRA in 1996.  1995, No. 159 (Adj. Sess.), § 1.

> Prior to the 1996 amendment, the *only* cost that the PRA authorized an agency to charge a requestor was for use of the agency's "photocopying machine or other mechanical device" used to make a reproduction of a requested record.  1 V.S.A. § 316(b) (1995); see also *id*. § 316(e) (1995).[1]  Subsection 316(a) (1995) referred disjunctively to the right to "inspect or copy any public record."  Subsection 315(a), then and now, refers to the "free and open examination of records" and does not mention duplicating those records.  Thus, prior to 1996, there was a material difference between a request to merely look at a public record and a request for a reproduction of that record that the requestor then could own: the agency could charge for making the reproduction.

> Mr. Doyle sees in this distinction in the pre-1996 PRA a conscious decision by the legislature to ensure that inspection-only (not involving duplication) remain cost-free to the

---

[1] One provision of the original PRA, which still exists, implies that agencies might have imposed other charges for producing public records: "Nothing in this section [allowing photocopy charges] shall exempt any person from paying fees otherwise established by law for obtaining copies of public records or documents, but if such fee is established for the copy, no additional costs of fees shall be charged."  1 V.S.A. § 316(b) (1976).

requestor despite the burdens on the agency, a decision, he argues, that the legislature preserved in the 1996 amendment by its usage of the *disjunctive* terms of art "inspection" and "copy."

Mr. Doyle attributes too much significance to these terms when interpreting the PRA's 1996 amendment. The 1996 amendment did not simply add the provision on charges for staff time. Among other things, it extensively modified the PRA to account, for the first time, for a new era in which public records were coming to largely exist exclusively in electronic form.

Prior to the amendment, the PRA did not explicitly account for electronic public records, much less their ubiquity, in any way. It envisioned someone physically walking into the agency's physical office "between the hours of nine o'clock and twelve o'clock in the forenoon and between one o'clock and four o'clock in the afternoon" and asking to see a public record, generally a paper record. 1 V.S.A. § 316(a) (1976); see also *id*. § 317(b) (1976) (defining public record but not expressly indicating that it encompasses all manner of electronic recordings). It required the agency to "promptly produce the record for inspection," *id*. § 318(a) (1976), and it envisioned that the requestor may then want a photocopy of it, *id*. § 316(b) (1976). If the agency did not have the equipment necessary to make a reproduction, the PRA did not require the agency to permit any reproduction to be made. *Id*. § 316(c).

Nothing in the original PRA expressly anticipated that an agency would need to redact and then produce a record.[2] Certainly nothing in it anticipated than an agency would need to perform electronic redactions to a video recording and produce that.

The 1996 amendment ushered in recognition of the far more complicated world of electronic public records, which enabled far more complicated records requests (such as for all documents responding to a keyword search) and correspondingly far more substantial burdens on public agencies responding to records requests.[3] It expanded the definition of public record accordingly. See 1 V.S.A. § 317(b) (1996). It included provisions on the production and formatting of electronic documents. See 1 V.S.A. § 316(h), (i). It included a new and expanded cost recovery provision, 1 V.S.A. § 316(c) (1996), and it enlisted the secretary of state to standardize amounts that could be charged if not otherwise designated, *id*. § 316(d).[4]

---

[2] The Vermont Supreme Court mentions production with redactions under the PRA for the first time in *Herald Ass'n, Inc. v. Dean*, 174 Vt. 350, 357 n.* (2002). It more explicitly required courts to consider redaction as a mode of compliance with the PRA in *Norman v. Vermont Office of Court Adm'r*, 2004 VT 13, ¶ 10, 176 Vt. 593 (2004). The legislature did not explicitly require consideration of redaction in the PRA until 2011. 2011, No. 59, § 4 (adding 1 V.S.A. § 318(e)).

[3] Before the ubiquity of electronic public records, an agency would have had virtually no ability to accurately respond to a request for all records in its possession in which a particular keyword existed. It is not reasonable to suppose that in the era of paper records such requests typically were made.

[4] The parties have provided no evidence, and the court has found no indication, that the secretary of state ever has purported to authoritatively interpret 1 V.S.A. § 316(c) in any manner that might affect this case. Mr. Doyle asserts that the secretary has. See Plaintiff's Reply at 12 n.11 (filed Aug. 6, 2018). However, his evidence of it is a non-authoritative *suggestion* in a pamphlet or presentation called Got Transparency? (page 42) that suggests that municipalities should err on the side of caution and not charge for staff time unless that time is devoted to making copies and otherwise should consult their legal counsel. Vermont Secretary of State, Got Transparency?, available at https://www.sec.state.vt.us/media/874659/got-transparency-presentation-2017.pdf.

The two provisions in the 1996 amendment related to requests for and the format of electronic records refer exclusively to *copies* of electronic records and nowhere refer to the mere *inspection* of an electronic record, as though a requester might pull up a chair in the records custodian's office and there view the requested material on an agency computer without any "copy" having been made.[5] Subsection 316(i) (1996) provides:

> If an agency maintains public records in an electronic format, nonexempt public records shall be available for copying in either the standard electronic format or the standard paper format, as designated by the party requesting the records. An agency may, but is not required to, provide copies of public records in a nonstandard format, to create a public record or to convert paper public records to electronic format.

Subsection 316(h) (1996) provides:

> Standard formats for copies of public records shall be as follows: for copies in paper form, a photocopy of a paper public record or a hard copy print-out of a public record maintained in electronic form; for copies in electronic form, the format in which the record is maintained. Any format other than the formats described in this subsection is a nonstandard format.

Textually, these provisions appear to contemplate that the production of an electronic record necessarily entails providing a "copy" to the requestor, whether printed out or supplied in electronic form.

The new cost-recovery provision in the 1996 amendment accompanying those provisions recognizing electronic records provides:

> In the following instances an agency may also charge and collect the cost of staff time associated with *complying with a request for a copy* of a public record: (1) the time directly involved in complying with the request exceeds 30 minutes; (2) the agency agrees to create a public record; or (3) the agency agrees to provide the public record in a nonstandard format and the time directly involved in complying with the request exceeds 30 minutes. The agency may require that requests subject to staff time charges under this subsection be made in writing and that all charges be paid, in whole or in part, prior to delivery of the copies. Upon request, the agency shall provide an estimate of the charge.

1 V.S.A. § 316(c) (1996) (emphasis added).

There are two potentially reasonable interpretations of the inclusion of the term "copy" in

---

[5] In common usage, there is no original of an electronic record in an agency's possession if it possesses that record only in electronic form. There may be have been a paper original at some time. But if an agency possesses a record in electronic form only, the distinction between an original and a copy stops having any utility.

this provision. It could reflect a distinction between examining a public record and acquiring a reproduction of a public record, in which case its provisions would apply only to the latter. If this were so, however, presumably all requests involving electronic records naturally would be requests for copies regardless whether the requestor sought to take ownership of duplicates.

Or, that narrow focus on the word "copy" in § 316(c) as distinct from a request to inspect is misplaced and was not intended to limit the provision because, by the time of the 1996 amendment, the word "copy," in the era of electronic records, was being used in the PRA more generally than to refer to a photocopy or similar reproduction that a requestor could take possession of, but which a requester, as in this case, could seek to view and refuse to take possession of. The court concludes that this interpretation makes better sense, most reasonably accounts for what the legislature was attempting to achieve with this provision in 1996, and most reasonably interprets this provision as one part of a coherent whole.

The court does not see the distinction between inspection and copying as determinative for the imposition of costs pursuant to 1 V.S.A. § 316(c). The focus of § 316(c) is on creating some protection for agencies dealing with otherwise burdensome records requests that will consume more than 30 minutes of staff time or where the agency agrees to create a new public record that did not exist before (presumably using data that it already possesses). There is no apparent rational reason that the legislature would enact such a provision but have it apply only where the requestor wants to take possession of a paper or electronic copy of the requested record and not where the requestor's request imposes the same burden on the agency but the requestor wants to view the requested information on the premises without leaving with a copy of it. In either event, the agency is being compelled to devote its resources to something that it would not otherwise be doing.

There is no overarching distinction in the PRA between seeking a copy of a record and seeking to inspect a record except on the more granular level of format, photocopy charges, etc., that have no bearing on the purpose or provisions of § 316(c). The disjunctive reference in the PRA to the rights to "inspect or copy" is not to two separate rights with a public records regime built around the distinction. The PRA uses the word copy in some places to literally mean the reproduction of a public record, as in to make a photocopy. In other places, such as § 316(c), the term is used more broadly to refer to the production of a public record.

The staff time cost recovery provision at 1 V.S.A. § 316(c) applies to public records requests regardless whether the requestor purports to merely seek to look at responsive records rather than acquire reproductions of them.

Redacting a requested document prior to producing it so that a public record that includes both publicly accessible and not publicly accessible information may in fact still be produced is an act of "complying with the request." 1 V.S.A. § 316(c) (1996). Reasonable staff time spent making necessary redactions is properly included in § 316(c)(1) staff time.

There are no amendments to the PRA following the 1996 amendment that draw these conclusions into question.

5

ORDER

For the foregoing reasons, Mr. Doyle's motion for judgment on the pleadings is denied.

A status conference will be scheduled to determine the remaining needs of the case.

Dated at Montpelier, Vermont this _____ day of August 2018.


_____
Mary Miles Teachout
Superior Judge